*583 OPINION OF THE COURT
Debra A. James, J.
The Attorney General of the State of New York initiated this proceeding pursuant to General Business Law § 873 and Executive Law § 63 (12) seeking injunctive relief and statutory penalties and costs alleging that respondent store violated General Business Law §§ 349 and 872 by engaging in fraudulent, deceptive and unlawful acts and practices with regard to the sale of imitation weapons.
Respondent Gift & Luggage Outlet is a small retail store located in northern Manhattan. In its response to the petition respondent denied selling items which violated that statute. This court having found that there was an issue of fact regarding the nature of the items sold by respondent issued an order dated October 3, 2002, setting this matter down for a hearing on October 31, 2002. This court, having reviewed the submissions of the parties and the evidence and testimony adduced at the hearing, finds as follows.
Petitioner introduced testimony of its investigators that on separate occasions, on January 18 and January 25, 2001, they each purchased a “commando” toy and gun set at the store for five dollars. Petitioner also introduced a receipt for the purchase made on January 25, 2001. The “commando” set included action figures, an imitation police shield, four suction cup darts and an imitation revolver. Respondent did not deny selling the items in question and respondent introduced an invoice dated November 4, 2000, which indicated that the store had purchased four “commando” toy sets from a distributor.
Based on this testimony and evidence the court finds that the respondent did sell the “commando” toy sets to the investigators as alleged by petitioner.
The next issue is whether the “commando” toy sets contain an “imitation weapon” as defined in General Business Law § 871 (2). That section states:
“ ‘Imitation weapon’ means any device or object made of plastic, wood, metal or any other material which substantially duplicates or can reasonably be perceived to be an actual firearm, air rifle, pellet gun, or ‘B-B’ gun; unless such imitation weapon (a) is colored other than black, blue, silver or aluminum, (b) is marked with a non-removable orange stripe which is at least one inch in width and runs the entire length of the barrel on each side and the *584 front end of the barrel, and (c) has a barrel at least one inch in diameter that is closed for a distance of not less than one-half inch from the front-end of its barrel with the same material of which the imitation weapon is made. ‘Imitation weapon’ does not include any nonfiring replica of an antique firearm, the original of which was designed, manufactured and produced prior to eighteen hundred ninety-eight.” (General Business Law § 871 [2].)
An investigator from the petitioner’s office testified that in his opinion the toy gun included in the toy set did not include the markings required by the statute and was of a color prohibited by the statute and that therefore the weapon violated the statute. Under General Business Law § 873 such a finding by the Attorney General is a predicate to the initiation of enforcement proceedings. However, the statute sets forth that the factual and legal determination of whether a violation of the statute has occurred rests with the court.* Thus this court must make its own determination as to whether the toy gun included in the “commando” set is an “imitation weapon” whose sale is prohibited by the statute.
At the hearing the petitioner introduced into evidence the two “commando” toy sets purchased by its investigators. The court’s examination of the toy revolver included with the toy set reveals that it is made of plastic with a silver barrel and a silver and black handle. It is in the shape of and generally resembles an actual revolver. The toy revolver does not include an orange stripe along either side of the barrel. The barrel of the toy gun is notched at the end with the opening extending back into the barrel approximately three fourths of an inch and the barrel itself is one-half inch in diameter at its open end. The toy set includes four plastic suction darts which ap *585 parently fit into the notched end of the barrel. The trigger on the toy gun is operable and apparently the gun is able to propel the suction darts out of the barrel of the toy gun.
Based on its examination of this evidence as submitted, the court finds that the “commando” toy sets sold by the respondent are “imitation weapons” as defined by General Business Law § 873 because (1) the revolver that comes with the toy set is in the prohibited colors of silver and black, (2) the toy revolver does not possess the required orange stripe along both sides of its barrel, (3) the barrel of the toy revolver is less than one inch in diameter and is not plugged at its end, and (4) the toy revolver is in the general shape of an actual revolver, shoots projectiles, and may be easily mistaken for an actual revolver. The “commando” toy gun is precisely the type of imitation weapon whose sale and distribution the law prohibits.
General Business Law § 873 prescribes that the court in its discretion may impose a civil penalty of up to $1,000 for each sale of an imitation weapon. Having found that the petitioner has proven that the respondent on two occasions sold imitation weapons, this court may impose a maximum penalty of up to $2,000 under the statute.
In deciding the appropriate penalty to be imposed in this case the court takes notice of a number of factors. First and foremost is that the Legislature has wisely concluded that the sale of toy weapons represents a serious threat to public health and safety and has expressed its intent in General Business Law § 870:
“The legislature finds and declares that there exists an unreasonable risk of injury and death associated with the sale of toy weapons which are replica of and cannot be easily distinguished from actual weapons; that in recent years the sale and possession of these imitation weapons has grown; that in nineteen hundred eighty-seven, more than fourteen hundred toy imitation weapons involved in criminal incidents were confiscated by the police in New York City alone, nearly eighty percent more than four years earlier; that when such imitation weapons are perceived as actual weapons fear and dangerous defensive actions often result. The legislature further finds and declares that the purpose of this article is to safeguard the public from the unreasonable risk of death and injury that may result when imitation weapons are perceived *586 as real, by banning the importation, manufacture, distribution and sale of such imitation weapons.”
This court therefore must impose a penalty which “satisfies] the legislative purpose or act as a warning to discourage the prohibited act. The public safety interest must be accommodated.” (Matter of Meyers Bros. Parking Sys. v Sherman, 87 AD2d 562, 563 [1st Dept 1982], affd 57 NY2d 653 [1982].)
The amount of any penalty imposed must be sufficient to deter future violations by the respondent in light of the expressed legislative purpose to insure public safety by prohibiting the distribution of imitation weapons. The court also notes that the nature of the violation and the size and scope of the violation must be considered in the determination of the deterrent eifect of any penalty. The respondent is a small business with limited resources. Kathy Na, the owner of the store, testified that once the store received notification from the Attorney General that it was in violation of the statute, the store immediately ceased selling the toy set and has not sold any toy revolvers since that time. The testimony also indicated that the store owner understood the seriousness of the violation and agreed that the store would not repeat the violation. The court further takes notice of the fact that the respondent store introduced into evidence a receipt from the distributor of the imitation weapons and this cooperation provides useful information to the Attorney General enabling that office to stop the trade in these dangerous instrumentalities at their source.
After due consideration of these factors, the court hereby enjoins the respondent from further violations of article 39-B of the General Business Law (General Business Law § 870 et seq.) and imposes a fine of $750 per violation for a total fine of $1,500 upon the respondent pursuant to General Business Law § 873. This injunction and fine should be sufficient under these circumstances to deter future violations by the respondent.
Petitioner seeks to impose additional penalties upon respondent pursuant to sections 349 and 350-d of the General Business Law. Section 349 (a) provides that “[deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.” Section 349 (g) provides that the statute is applicable to all unlawful deceptive acts and practices whether or not such acts are governed by any other law of this State.
However, petitioner fails to provide persuasive authority for the application of section 349 of the General Business Law *587 where, as here, the Legislature has promulgated a detailed and specific statutory scheme prohibiting certain conduct, granting the Attorney General enforcement authority, and imposing specific penalties for proven violations. The cases cited by the petitioner only stand for the proposition that where no private right of action exists for the violation of a statute, section 349 may be invoked by plaintiffs if the violation of the statute constitutes a deceptive practice. (See Walts v First Union Mtge. Corp., 259 AD2d 322, 323 [1st Dept 1999] [where no private rights of action existed under Insurance Law § 6503 (d) plaintiffs could allege deceptive practice under General Business Law § 349]; Sterling v Ackerman, 244 AD2d 170 [1st Dept 1997] [private right of action available under General Business Law § 849 for violation of Medicare billing statutes].)
The court declines to impose further penalties under section 349 of the General Business Law. The injunctive relief and financial penalties the Legislature authorized the Attorney General to seek under section 873 of the General Business Law were part of a comprehensive scheme for dealing with the danger presented by imitation weapons. Section 873 was specifically enacted by the Legislature to prescribe the enforcement mechanisms and penalties to be imposed for violations of section 872. To accept the petitioner’s argument that a violation of section 872 should also lead to the imposition of additional penalties pursuant to sections 349 and 350-d would upset the statutory scheme and impose double penalties for the same violation in a manner not intended by the Legislature. For similar reasons, the court declines to impose any additional penalties upon respondents pursuant to Executive Law § 63 (12).
Finally, the court exercises its discretion and declines the petitioner’s request for costs pursuant to CPLR 8303 (a) (6).
It is therefore ordered that respondent pay a penalty of $1,500 pursuant to section 873 of the General Business Law for violations of section 872 of the General Business Law; and it is further ordered that the respondent is hereby permanently enjoined and restrained from further violations of General Business Law § 872.

 General Business Law § 873 states: “Whenever the attorney general shall believe from evidence satisfactory to him that any person, firm, corporation or association or agent or employee thereof has violated any provision of this article, he may bring an action or special proceeding in the supreme court for a judgment enjoining the continuance of such violation and for a civil penalty of not more than one thousand dollars for each violation. If it shall appear to the satisfaction of the court or justice that the defendant has violated any provision of this article, no proof shall be required that any person has been injured thereby nor that the defendant knowingly or intentionally violated such provision. In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules. In connection with any such proposed application, the attorney general is authorized to take proof, issue subpoenas and administer oaths in the manner provided in the civil practice law and rules.” (Emphasis added.)